With your argument next in United States v. Schena, Case 23-2989, let's let counsel have a minute to get set up. Okay, Ms. Spiro, good morning. Good morning, Your Honors, and may it please the Court, Leah Spiro for Defendant Mark Schena. I'll watch the clock and try and reserve five minutes for rebuttal. Throughout this prosecution and appeal, the government has suggested several different acts and schemes that Mark Schena and others allegedly committed, but the jury was asked to find guilt on much more specific grounds, and this appeal centers on what the jury was actually asked to find. I plan to focus on three issues. First, the marketing influence kickback theory that was just discussed in the SNG case and was the theory presented to the jury in this case for the ECRA counts. Second, the $21 million securities fraud restitution order that was based on scheme liability, although the jury never found a scheme as an element of the securities fraud offenses. And third, the prejudicial error in the knowingly instruction for counts one through six, which misinformed the jury about the knowledge that it had to find. Turning to the marketing kickback theory, I'll pick up on some of the points that were raised in the SNG first, and I'll start with the indirectly language. That language describes the mode of payment when someone serves as a conduit between the payor and the payee. It does not modify the word inducement, and so its placement in the statute is very important here. There is a copy of the ECRA statute at opening brief, page 80, and it shows that the word indirectly appears in a clause that refers to remuneration, and that clause talks about several different ways that the remuneration can be paid. It can be paid as a kickback bribe or rebate. It can be paid directly or indirectly. It can be paid overtly or covertly, and it could be paid in cash or in kind. And then there's a clause about what the payment is made for. It's made either in return for referring a patient or to induce a referral. And so based on its placement in the statute, indirectly simply does not modify what it means to induce someone. And then I'll talk about the legislative history. SNG's counsel has leaned heavily on the legislative history and Congress's supposed intent to cover regular traditional marketing, but there is no mention whatsoever of this concern about marketing in the legislative history, and the Supreme Court has been very clear that if courts are going to rely on legislative history, then it has to be crystal clear that Congress intended to address that ill in the statute. So can I ask you, is Shana the type of person who can be covered by this, even though he's not actually making the referrals? It would depend on his conduct, and I think you stated it well. It would depend on whether there was some level of undue influence in the process. And I think that the Fifth Circuit's Marchetti decision, which is its last decision in the trio of decisions, does the best job in teasing out what it would mean for a marketer to unduly influence. In the Marchetti case, the marketer had two different primary activities. One was to do the type of traditional marketing that Arayat's marketers did in this case. They pitched doctors on using the lab's products. And the court said that even though the marketer had close, friendly relationships with the doctors to whom he marketed, that was traditional marketing, that was not undue influence, that was not inducement. But then the court drew a distinction because in that case, the marketer also worked with an intermediate warehouse where samples would be sent, and then they would be routed to one of two labs. And the marketer came up with a scheme where he asked the second lab to use the same equipment as the first lab so that he could reroute samples from one lab to the other. And so there he really was making a referral decision because he was, without the knowledge of the doctor, he was routing the samples from the lab that the doctor had picked to a different lab. And so that was clearly an act of undue influence. It was an actual making of a referral. And I think that— Counsel, if I may, what do you make, then, of the allegations that the marketers in this case targeted naive doctors? And, you know, to help them kind of guide them on these decisions and the tests, as alleged, were unnecessary, there was more than needed, and they probably weren't the best tests to have done on these patients. But, you know, the record tells us several times that the marketers specifically sought out naive doctors. I think that is really a fraud problem or a false advertising problem. That's a problem with the advertising itself and not a kickback theory. And so if you take a very classic kickback theory, if the lab was going to the doctor and making false representations about the test, which is what the government has alleged happened here, then that would really be, again, more of a fraud or a false advertising problem. That would not be a kickback problem. So the idea that a RAID is paying marketers, and then marketers are using some sort of, you know, less than perfect marketing scheme, and they're trying to pitch it on doctors who might be more susceptible to using the test, that's not a kickback problem. That is not within the paradigmatic situation. And so in your mind, that's not undue influence? That's not undue influence. And I think it has to be. Why not, though? I mean, it seems, wouldn't it at least be a jury question then that if a lab hires a marketer to go to a doctor and misrepresent the lab's services and the need for those services, and the doctor hearing this says, okay, I'll go ahead and refer that, and the marketer is paid on a commission-based payment system, why wouldn't that at least be a jury question as to whether it's induced a referral? I think the problem is that that gets away from the remuneration. And in a kickback scenario, it's the payment. It's not the whatever pitch you're making to the person who you're trying to get the referral from. So when you think of a kickback, this court has made clear that the understanding of a kickback or bribe is payment to corrupt the judgment of the person who's making the referral, and they're getting the payment in exchange for making the referral. And so now instead of the payment being the inducement for the referral, it is the pitch to the doctor that is misleading them, and that is inducing the referral. So I think this gets very tangential because, again, a rate is paying a marketer. A marketer is making a false pitch or a misleading pitch or is choosing doctors who don't know as much. And the doctor isn't getting the payment. That's not what's encouraging them. The doctor is just being misled because they don't know as much about the market. So in your scenario then, is my understanding correct that it's only an undue influence if the marketer is actually paying the doctor to make these, send it to the lab? I don't think the payment has to be made necessarily by the marketer, but what needs to happen is that the marketer is in some way, the remuneration is influencing the transaction more directly. Because again, this is not a statute where indirect influence becomes a kickback. I would turn, one example is the Shoemaker case from the Fifth Circuit where payments were going to a board chair of a hospital. The board chair, by virtue of their position, convinced the administration to make the referrals because they were in a position of power over the administration, and so that was a kickback. And there again, that's a position of power that they're able to exercise. I think in the example where the marketer is simply giving misinformation to a doctor, that's just not what we think of as a kickback. And again, if the lab was just giving misinformation to the doctor and the doctor was making the referral, this wouldn't fall under ECRA. One thing to keep in mind is that this is a criminal statute, and although it appears in the S&G case, which is a civil case, the statute has to be read under the criminal statutory interpretation principles, including that it has to be in harmony with the ordinary understanding of a kickback. It has to be read narrowly, and it doesn't turn on the broadest imaginable definition of the component word. So when we think about the ordinary concept of a kickback, which this Court and all others have defined over and again, it's the idea that payment is flowing to someone to corrupt their power, their use of the power to steer business or favors to a particular business or person. And this really has gotten so far afield because it's paying a marketer to successfully market to doctors. And another problem— I just want to make sure I understand kind of the—this is a legal challenge, right? You haven't challenged the sufficiency of the evidence. There's not really a challenge, I don't think, to any of the jury instructions on this point. So the argument you're making is essentially a client—your client who's a—if you're bringing in marketers, it's—it doesn't violate ECRA, even to have those marketers make misrepresentations to doctors, that is just—as a matter of law, that does not rise to the level of an ECRA violation? That's not an ECRA problem. That's another problem. He could be, you know, charged with something else, or it could be charged with some other scheme, and I think that was one of the very broad healthcare fraud scheme theories that the government pursued here. But it doesn't fall under ECRA. It's just not a kickback problem. So certainly I'm not saying that you can hire marketers to mislead doctors. That's going to be captured by some other law. But it's not a kickback problem. And so to your point, Judge Brest, this is a distinct legal error. It's not sufficiency of the evidence. It's not jury instruction. It was raised multiple times throughout trial by defense counsel, and so clearly it was preserved. And as the Millhiser case set out, the question on appeal is really, was this theory presented to the jury valid? And if it wasn't, has the government shown beyond a reasonable doubt that the jury wasn't affected by this theory? And here that can't be said because this was the theory for ECRA presented to the jury. Let me turn to the securities fraud restitution order. The problem with that order is that it's based on a sweeping fraud scheme that was not a necessary element of the jury's verdict. And this court's case law is very clear that a restitution order must be limited to the losses caused by offense conduct. And specifically, restitution cannot be based on scheme liability unless a scheme is necessarily found as an element of the underlying offense. And so here, a scheme isn't an element of a securities fraud offense. The Securities Fraud Order requires as an element any manipulative or deceptive device or contrivance. And then 10b-5 describes different means of having that type of contrivance, and it's in the disjunctive. That can be an individual misstatement. It can be an individual omission, a scheme, or a pattern of conduct. Those are different means of committing that element of the device or contrivance. Here, the jury was informed of these four different means in the disjunctive, so it could have found any of them. And the verdict form steered them towards three specific misstatements, the press release, the tweet, and the email message. The verdict form says nothing about finding a scheme. The instructions didn't require the jury to find a scheme. And so it simply can't be said that there was a scheme as a necessary element of the securities fraud offenses. And yet, the government's restitution order is based on a five-year securities fraud scheme. So how should it, if you had just a single discreet tweet or email, what should have been done instead? Some sort of market analysis for the stock drop in connection with that with expert testimony? Exactly. That's what experts do. They can pinpoint what sort of loss can be attributed to individual statements. And then let me touch upon the erroneous instruction for the knowingly element for counts one through six. Whatever standard of review the court applies because there is a disagreement about which one should apply, the error in the instruction was plain under this court's decision in lieu, and the error was prejudicial. And what makes this case different from most other jury instruction error cases is that the jury indicated its confusion, and it was confused about exactly the two instructions that contradicted each other. And this court's decision in Morris underscores that this court doesn't second guess when a jury indicates that it's confused about the exact instruction that has an error in it. In Morris, and in this case, the jury asked for clarification on the mistaken instruction, and the judge pointed them right back to the mistaken instructions. And so just as in Morris, even though there were other instructions that could have clarified for the jury what the right rule of law was, jurors can't be counted on to arrive at the right rule of law when they are given contradictory instructions and they're not given any indication of which one governs. And here it was prejudicial because Mr. Sheena's main defense was that he didn't know his actions were unlawful. He was a scientist. He did not know all of the regulatory compliance issues, and so this mistake went to the heart of his defense. And so counts one through six must be reversed. Can I ask you on the on the ECRA counts, if you were to prevail on those, what does that do to the trial? Is it your view he would have to be retried? Yes, under a valid theory if the government has one. Okay, but your position is the ECRA theory is invalid, so it would essentially drop out, but the sentence is the same, it would appear, based on the health care fraud. That might be right if the court didn't agree about the instruction for counts one through six, but that affects the health care fraud counts, so it's our position that the health care fraud and the ECRA counts must go because of the jury instruction. Right, but if the instruction is not plain error, let's just assume that for a second, and let's assume you prevail on the ECRA point, then what happens? What should happen? I think it should go back for resentencing just for the district court to make sure that the sentence is the same with the ECRA counts away, and of course to reevaluate the restitution. Okay, but it was not clear to me why it would need to be retried altogether, and I'm not sure you're suggesting that anyway. I'm not. Okay. Thank you. Thank you. Good morning. Good morning. May it please the court, Sophia Vickery for the United States. I'll just proceed in the same order as counsel unless the court has a different preference, and I'd like to start with ECRA just by clarifying the parties' positions because I think that we may in the end be a little bit closer than where we started. I understood from defense counsel's opening brief that they were appealing a motion to dismiss and arguing that there is a legal bright line. I'm looking at things like page 8 of the opening brief, and I believe it's page 35 on the ECRA argument, where the defendant suggests that only physicians who have the power to authorize a referral can receive the kickbacks under the ECRA statute. Now it seems that the defendant is conceding that it actually depends on the specific conduct in a particular case, which is also the government's position. The government has the burden to prove beyond a reasonable doubt to the jury that the intent of the kickbacks was to induce a referral. This case was argued in exactly that way, and I'm both sides presented this argument. So the government in its closing, for example, I'm looking at 2372, and in the rebuttal 2377, the government argued about why the defendant paid these kickbacks, explaining that they were paid to induce referrals, that the marketers use these deceptive theories, pointing to testimony about how those theories, how the deceptive marketing actually caused the referrals to happen. Defense counsel made the opposite argument. So page 2441, defense counsel tells the jury, inducement is to actually cause referral of a patient, and then argued based on the testimony presented in the case that the kickbacks didn't actually cause a referral because the doctors weren't influenced by what the marketers did. The jury rejected that argument and convicted, and there's plenty of evidence on sufficiency review, which is not the way that this was briefed, to support that finding. I wanted to kind of go through a few of the theories on the legal argument. So to begin, there was the definition of induce that was presented for the first time in the reply brief. I think this court could consider that argument to have been abandoned. This is the first time in the litigation that that definition was presented. The parties in the motion practice used the definition this court has used in Hansletter, both in the defendant and the reply motion and the government motion, which is that the better definition of induce is to move by persuasion or influence, which is also the definition that I was just reciting that the defense counsel used in closing to the jury. Is that different than what the Supreme Court talked about in Hansen though? It is different, and I think that the specialized definition in Hansen just doesn't work with this statute. So in Hansen, the definition that the Supreme Court talked about was solicitation or facilitation of an offense, which made sense because in Hansen the statute was talking about inducing a legal re-entry. So the object of induce in Hansen was itself a crime, whereas here what's being induced in ECRA is the referral, but the referral is not a crime. What's a crime under ECRA is the kickback. So it doesn't make sense to you that definition in this case. The better definition is the Hansletter definition that this court has used in the anti-kickback statute context, and that's also used in other courts of appeals. For example, some of the Fifth Circuit cases cite that definition. Is the government's position that this would cover a sort of standard marketing arrangement? We heard argument, which you presumably listened to in S&G, where it seemed that the argument being made was that anytime you have a marketer who's involved in doing this kind of marketing and you have a commission-based payment system, that could be suspect. What's the government's position there? I don't think that's true. I think it's very fact-dependent. A percentage-based payment is not per se unlawful. So the structure of a contract alone would not be by itself sufficient evidence. That's a quote from, I believe, Marchetti in the Fifth Circuit. What the government has to show, beyond a reasonable doubt, is that the purpose of the kickbacks was, quid pro quo, was to induce referrals. It is not to compensate marketing or advertising or hours worked or other legitimate services, that it is in exchange for the referrals. That's the government's burden, and there was sufficient evidence in this case to meet that burden. If the court has no further questions on the ECRA point, I could move to the sentencing questions. In sentencing, there was a discussion about the scope of the offense that was charged with respect to securities fraud. I wanted to clarify a few points there. I'm looking at the indictment, and I would point the court to paragraphs 29 through 32. It's a subsection called The Scheme to Defraud, and it describes how beginning in or around 2015, continuing through in or around 2020, she and I, together with others, and then there's a lot of subparagraphs there, talks about the tweets, extraditing undue influences, the press releases, the, you know, financial statements are coming, wait another minute, no, now they're not coming, now I'm sending emails. It sort of describes the evidence that was laid out to the jury. Those paragraphs are incorporated into counts 7 through 9 in paragraph 59. So you're contention that there was a scheme alleged, that that was charged? Yes, this is charged. It was also argued that way to the jury, so I'm looking at the closing argument 23-28 in the excerpts of the record. The prosecutor starts off discussing the elements of securities fraud by saying, and I'm quoting, you must find that he engaged in a scheme to defraud investors in Arayat Securities. That's the way it was argued, and then she continued on to lay out the other elements and the evidence supporting that scheme. Counsel mentioned the jury instructions, and I agree that there is the word or in the jury instructions. This is the first time that that argument has been made in this litigation. It was not an objection in the charge conference. It was not objected to after. It was not in any of the briefs. And similarly, any complaints about the verdict form, again, this is the first time that that issue has been raised, and I think it would be fair to consider it abandoned, particularly in light of the clarity of the allegations and the argument. On to the jury instructions. There was no plain error in these jury instructions. It would have been impossible for the jury to have convicted Mr. Sheena without also finding that he acted with a bad purpose, and that's because the Willfully instruction was legally correct. It described that he needed to have acted with a bad purpose, and in each description of the offenses, in each time that the district court told the jury what elements it had to find, it said that the jury had to find beyond a reasonable doubt that he acted knowingly and willfully. In order to have found that, the jury would have had to have found that he acted with a bad purpose. I also disagree with the assertion that the jury was confused. I don't think there's any evidence of that. The jury did submit a couple of notes asking questions. I think what that shows is that this was a complex case, and that the jury was being careful. It was carefully parsing through these different instructions about distinct aspects of subjective knowledge, and in response to those questions, the district court referred the jury back to the legally correct definitions of knowingly and willfully, without objection, from defense counsel, and the jury returned a verdict of guilty. Again, it would have been impossible for them to have done so without finding that Mr. Sheena acted with a bad purpose, and that's particularly clear on plain error review of these instructions. Can we go back to the restitution? I just want to make sure I understand the argument you're making. So you're looking at paragraphs 29 around there in the superseding indictment, which have, I think, a reference to a scheme. They call it a scheme to defraud. If you then go down, though, to the actual counts, they are at least three dates, three dates with three statements. And your position is that that essentially is incorporating the allegations from above, and what's being alleged here is a scheme from essentially November 2018 to March 2020? Right, and particularly paragraph 59, which is the first paragraph under the sort of subtitle count seven through nine, specifically incorporates the allegations in those prior paragraphs that's laying out sort of the background facts that were happening. So yes, the position is that that scheme to defraud section is specifically incorporated into these counts. This is what was charged, and as I mentioned, it's also what was argued to the jury and instructed without objection. So is it your position that you need to charge scheme in order to get restitution award? In other words, could the restitution award have been given without you specifically alleging a scheme? I'm not sure. You would have to find, you know, some connection between the offense conduct that was alleged. Correct. I mean, my question is, do you need to plead it in order? I'm not certain. In this case, we did, and so I think that it's more... Well, they disagree. That's why I'm asking. So I think if it was a different indictment and it was, you know, more limited to only a smaller date range, then we would have needed perhaps to show more evidence as to why this larger date range was connected specifically to what was pleaded. So I think in that instance, perhaps a remand would be appropriate to consider whether there was the connection between, I guess, what the defendant is arguing was alleged and what our position. And what standard or review would you apply to this? So the...and I just want to be clear about this. So the clear error would apply to the actual calculation and to whether that is reasonably foreseeable. To the extent that this court finds a legal error in sort of the scope, then I think that would be de novo. If the court has no further questions, the government would ask you to affirm. Thank you. First, this is not an insufficiency of the evidence argument. And the Troy case we cite points out that this court determines whether the theory presented to the jury was legally valid. The government proved what it set out to prove, that a rate paid marketer is not eligible for a patent.  And that marketers pitched a rate's products to doctors. There's no dispute that that was proven. The question is, is that actually a valid theory under ECRA? And that is what this court decides. And the government has yet to show that the jury relied on any other theory because that was the only theory presented to them. In terms of the... But to the point, your point is even a theory by which marketers are hired to make false representations to doctors, that does not fall within ECRA. It may violate some other law, but that's the crux of your position here? That's correct. Okay. And in terms... And walk me again through why, because it's not tight enough to a referral? Exactly. And if you cut out... I mean, if you think of a kickback and the company, Arrayed itself, made misleading statements to the doctors in order to get them to make the referral, that's clearly not a kickback. It doesn't become a kickback because a doctor is paying a marketer who does exactly what the allegedly unlawful thing is to make the misstatement to the doctors, and then the doctors make the referral. Adding a link in the chain and paying marketers doesn't turn what is misleading into something that's a kickback. And time and again, the United States Supreme Court has said that the government can't expand kickbacks and bribes past the paradigmatic scenario of paying in order to have the referral made. So to repeat Judge Pressa's earlier question, why isn't that a jury question? I mean, you've argued as though those are the undisputed facts. Maybe they are and maybe they're not, but it seems to me if you're trying to put together a chain and arguing that there's a break in the chain, that's a jury question. I don't... Why isn't it? I don't think so because the question is how broad legally does this statute go? Does a kickback as described in that statute, as Congress sought to prohibit it, does that cover where a company pays a marketer and the marketer misleads the doctor and the doctor makes the referral? That's a legal question about the scope of the statute. And turning to the court's question about the phrase inducement and whether you can use the Hanluster definition. I don't think it's good law after Hansen, but even in Hanluster, the court said marketers really encourage doctors to make referrals. They're not inducing. So even if you used the definition used in Hanluster, that still doesn't cover the scenario here. And then quickly... I want to hear about the restitution too, but on the question of if... Take out the intermediary and if you have a lab that is paying doctors for referrals and in the process lying to doctors about the quality of the medical services or making some other misrepresentation, why would that not be inducing a referral? Because the remuneration is inducing the referral. That's what the statute makes clear. It's not that the lie is inducing the referral. And so in your scenario, the payment certainly qualifies as a kickback. But throwing the lie in there doesn't mean all of a sudden it comes within the scope of the statute itself or the ordinary understanding of the kickback because the lie is accompanying the payment. Maybe it's causing the doctor to make a decision, but that's not... The statute itself is talking about remuneration in exchange for the referral. Okay. Do you want to address the restitution? Yes. So this court's case law in Batson, May, and Reed, all of which we've cited in our briefing, are very explicit that the element on which the restitution is based has to be found by the jury. And specifically, Reed talks about that. So scheme or a conspiracy has to be an element of the offense. And for example, that's true for the healthcare fraud. If you look at the jury instruction for that, the jury did have to find a scheme. That's what the jury instructions told them. And the government has now argued that in closing argument, the prosecutor did mention a scheme and told the jury it had to find a scheme. But we look at the jury instructions and the verdict form to see what the jury actually had to find. And in terms of whether a scheme or a conspiracy is an element, that's really a legal question. And this court, and I'm sorry it's not cited in our briefing because the government didn't really raise this point in its answering brief. But in United States versus McHatton, which was an unpublished case, number 2210329 in December 4th, 2024, this court said that scheme is not an element of the offense. That again, the statute itself has an element of a manipulative or deceptive device or contrivance. And then 10b-5 lists modes of contrivances, which includes a misstatement or an omission. Or a scheme or a course of conduct. And so any of those can be alleged to satisfy the element of contrivance. So even if you could fit scheme as a potential element the way that a case was presented to the jury, here what the jury had before them in their conference room when they were deliberating was an instruction that did not require them to find a scheme. A verdict form that listed three specific misstatements. And then a cross-reference that indictment, which to Judge Bress's point, called out the three specific misstatements. So where these modes were all listed in this disjunctive, this jury simply did not have to find a scheme. It was directed to find misstatements. And I'll also point the court to the fact that the district court itself acknowledged that the jury found misstatements. That it didn't find a scheme. So when it was calculating the sentencing guidelines at ER 270, it talks about the fact... I apologize. I might have... No, I apologize. It's ER 21. The court points out that the government's expert made no effort to attribute the losses to the three misstatements, which is what the jury found. It pointed out that it based it on this fraud scheme. That was not what the jury found. So the court refused to use the loss estimate, the scheme loss estimate, for purposes of sentencing. But where it went astray was that it felt that a lower burden of proof applied at the restitution stage. And so it widened the offense conduct that it was willing to consider. Counsel, I have a question. Was there any objection by the defense as to the jury instructions or the verdict forms? No, because they were proper. Those modes are meant to be listed in the disjunctive. And this court has said in other cases that that's the way that the jury instructions can be stated. They can state that the securities fraud could have been committed by any number of these means of deceptive practice. So they were proper, and now I'm a little confused here. So the jury instructions were proper, but the way that the jury actually fettered out its decision is improper? No, the jury didn't do anything improper. It just shows that the jury didn't have to find a scheme. So if the government wants to base a restitution award on scheme liability, then it has to have the jury find scheme liability, because you can't base the restitution order on something the jury didn't find. And here, what I'm pointing out in the jury instructions in the verdict form is that nothing required the jury to find scheme as an element of this offense. And so the prosecution can't say to the jury, if you find these three misstatements, you can convict him of securities fraud, and then turn around and try and base the restitution loss on a fraud scheme that the jury didn't have to find, because the jury just had to find the array that made those three misstatements. So I guess my confusion also lies in the fact that, why wasn't this pointed out when they had a discussion with the court about the jury instructions? That, hey, your honor, this, I mean, yes, legally it is correctly worded, but what the government is trying to do is not the appropriate way to go, this is not the appropriate way to go about it. Because they didn't know what theory of restitution the government was going with. So, you know, they're going through the trial, the prosecution is proving securities fraud in whatever manner. I think it was well understood that it was going to be based on these three misstatements. It used common jury instructions, which is allowed. The verdict form pointed the jury to the three misstatements. The problem arises at sentencing, when all of a sudden, the government seeks a loss based on a five-year scheme. And it wasn't apparent to defense counsel that that was going to happen, because that was at sentencing, and the government hadn't already said, oh, and by the way, you know, down the road, we're going to ask for, you know, five years worth of loss for restitution. That gets done way after the trial. And so there was no problem in the trial itself. The reason I point to the jury instructions and the verdict form is because the government has to base its loss calculation on an element that the jury actually found. But Batson seems to indicate it's based on conduct in terms of restitution, not necessarily finding an element. I mean, I'm quoting it. The word must be tied to the specific conduct that is the basis of the offensive conviction. So it seems to me under Batson, one can look at a trial testimony, not necessarily the jury finding. Yeah, we're talking about sentencing, obviously. Sentencing. Yeah, restitution. Well, I would say that that is related conduct, because the jury didn't have defined the scheme. And so even though the prosecution put that on, and certainly I think that could be related conduct for sentencing purposes, in calculating what the sentencing range is, which does allow for related conduct to come in, and you look at how was the case argued, and everything else that was put before the jury, and even sometimes conduct that wasn't put before the jury. But when it comes to restitution, and I would point the court especially to the Reed case, which talked about the elements at page 1422, it has to be based on what the jury actually found as the elements of the offense. And in that case, it pointed out that a conspiracy was not an element of the felon in possession offense or whatever was at issue in that case. And here, it's simply not the case that scheme was an element of the offense. Yes, the government talked about a scheme and how all of these three misstatements were related, but it didn't ask the jury to find that a scheme, that these misstatements were made in connection with an overarching scheme. I know you're way over, but I want to briefly ask you about the ECRA issue again. I take your position to be that a marketer can sometimes still be liable under this. I think there's been some confusion over whether marketers or sales agents are just totally outside the statute. But I hear you saying, no, sometimes they can be. Yes, and I think the Fifth Circuit makes that very clear. If having a marketer lie to doctors is not an inducement, what are examples of things that would be an inducement? Inducing a marketer who induces a referral. Who is this going to cover? There is an example in the Ham-Lester case. I think in that case doctors were told that they would get certain benefits if and only if they made referrals. There was a promise that they would get, and I don't think it was necessarily compensation. Maybe they would get an office or office help or something like that in exchange for the referral. If the marketer is offering the doctor something, hey, you're going to get something for sure out of this if you send us the referral, then the marketer is basically offering some sort of remuneration or benefit to the doctor that's inducing the referral. That's a situation where there could be something. Also, if the marketer gets to fill in the form and the doctor is just approving it and they always approve it. I think that type of situation was discussed in the Fifth Circuit cases where the marketer basically is in a position to say, hey, doctor, I filled out all the forms. Don't worry about it. Just do your stamp of approval, and it's shown that the doctor has never overridden the forms, the referral forms that the marketer has filled out. That crosses the line, and that becomes inducing a referral, even if the doctor has some sort of ability to overrule the marketer. Let me ask one further question on that, where you said the marketer must offer the doctor something, whether it was an office space or help or whatnot. Does it have to be tangible? What if I'm the marketer and I say, look, with this test, it's so much better than the rest. You might be able to find other ailments for your patients, and thereby you get to treat them even more, you get more insurance money because you found cancer early on them. I don't think that's enough for a few reasons. I think, first of all, the Han-Lester case did point out that the promise that maybe there will be some benefit to the doctor down the road is not distinct enough of remuneration. And so it has to be clear enough that this is tied to the referral and the doctor is going to get it. And so that's one reason. And then second is, I think, the looser this idea that you can just say, oh, maybe this will be good for your patients, and then the doctor is enticed to refer the patient based on that. That starts to get into the territory of what the Supreme Court has said gets far afield of a kickback or a bribe theory, where you kind of have intangible benefits that are being offered. And so I would say it gets back to the principle that kickbacks and bribes have a very well-defined ordinary meaning in criminal law, and the Supreme Court has continually rejected efforts to spread out the theory to cover broader scenarios. Okay. Well, I want to thank you both for your arguments this morning. This matter is submitted, and that concludes our calendar for today. We'll be adjourned. All rise.
judges: THOMAS, BRESS, ALBA